**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>v.<br>Linet Vartaniavartanians,<br>Defendant. | No. CR-25-00931-02-PHX-DGC<br>**ORDER** |

Defendant Linet Vartaniavartanians appeals the detention order entered by Judge Deborah Fine. Doc. 39. The government has filed a response and the Court held a hearing on July 30, 2025. The Court will affirm the detention order.

## I. Background.

The Court's review of the detention decision is *de novo*. *See United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990). The Court must review the evidence before the magistrate judge and any additional evidence submitted by the parties, "and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id*. at 1193. Under the Bail Reform Act of 1984, Defendant must be detained if the Court finds that no condition or combination of conditions will reasonably assure the safety of the community or her appearance at trial. 18 U.S.C. § 3142(e).

Judge Fine detained Defendant as a danger and a flight risk. Doc. 26. The government contends that the Court should affirm on both grounds. The government must

prove Defendant is a danger to the community by clear and convincing evidence, 18 U.S.C. § 3142(f), and that she is a flight risk by a preponderance of the evidence, *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

Parties may proceed by proffer at a detention hearing. *United States v. Cabrera-Ortigoza*, 196 F.R.D. 571, 574 (S.D. Cal. 2000) (collecting authorities). In this case, both parties provided proffers and oral arguments, and submitted exhibits from the hearing before Judge Fine. No party has requested an evidentiary hearing.

**II. Relevant Facts.**

Defendant has been charged with one count of threatening to assault or kill federal officers in violation of 18 U.S.C. § 115(a)(1)(B). Doc. 10. Her husband (and co-defendant) has been charged with being an alien in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(8). *Id.*

Defendant was born in Iran. She came to the United States in 2016 and became a naturalized citizen in 2022.

On the evening of June 21, 2025, ICE agents arrived at Defendant's residence to enforce a removal order against her husband. Defendant and her husband refused to open the door without a warrant. Defendant called 911 and, during the recorded conversation, said she was holding a loaded gun and intended to shoot any federal agents who entered her home. She also said she would go into the backyard and shoot the federal agents in the head. The agents did not attempt entry.

Federal agents executed a warrant at the residence the next day. The home was occupied by Defendant and her husband, and agents found a loaded Glock handgun on the kitchen table and a loaded Masada handgun on a nightstand in the bedroom. Defendant and her husband were arrested and charged with the offenses described above. For her detention hearing before Judge Fine, the pretrial services office prepared a report that reviewed Defendant's history and recommended she be released with conditions. Doc. 8. An addendum to the report identified two possible third-party custodians. Doc. 18.

## III. Analysis.

The Court must consider the following factors in deciding whether pretrial detention is warranted: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against Defendant; (3) Defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. 18 U.S.C. § 3142(g).

Addressing factors (1) through (3), the Court notes the following: Defendant is charged with a felony offense for allegedly threatening to assault or kill federal agents. Doc. 10. The evidence against Defendant is strong; her threats were recorded in a 911 call with the Tempe police department.[1] Defendant has resided in the United States since 2016 and has been a citizen since 2022. She has been employed in various jobs during her time in this country, and was employed at the time of her arrest. She owns no property in Arizona, but rented an apartment to which she would like to return.

The fourth factor – the nature and seriousness of the danger Defendant would pose if released – is the most important in this case. As discussed below, the Court does not find Defendant to be a flight risk. The question, then, is whether the government has shown by clear and convincing evidence that she is a danger to the community.

Defendant has no criminal history. She has been a law-abiding citizen during her nine years in this country and successfully completed the rigorous process of becoming a naturalized citizen. She has no substance abuse of concern, and no other historical factors suggesting violent or criminal tendencies.

The Court is very concerned, however, with Defendant's actions and statements related to ICE agents. The proffered evidence suggests that ICE employees approached

---

[1] Defendant is presumed innocent until a unanimous jury finds that the government has proved her guilt beyond a reasonable doubt. The recitations in this order are not conclusions that Defendant is guilty; they are included only to address the factors identified by Congress.

Defendant's home in May 2025, shortly after her husband applied for an adjustment of status based on his marriage to Defendant. These were not law enforcement agents, but ICE employees wishing to follow up on her husband's application. Defendant and her husband refused to open the door and speak with them.

Armed ICE enforcement agents approached Defendant's home on the night of June 21, 2025. Defendant and her husband refused to open the door when the agents indicated they had no court warrant. Defendant then called 911, apparently in an attempt to have Tempe police come to her home and protect her from the agents. Defendant knew the call was being recorded (Ex. 1 at 6), and yet made several concerning statements:

- "I have gun, and if they come over here and try to come into my home without a judge warrant because I asked them and they said they don't have one, I'm shooting them. Just so you know."
- "So, anybody tries to invade my home, I'm going to shoot them. Like I said, I have gun, and it's loaded."
- When asked where the gun was located, Defendant said "[i]n my hand, right now."
- "But I wanted to report this so you guys have it recorded. Anybody trying to enter my house is going to be shooted."
- "Can you send an officer quicker, ma'am, before they try to invade and I shoot them?"
- "Yes, because my husband is considered somebody that is in process of green card, and the stupid people are trying to detain him."
- "I definitely will shoot them. Doesn't matter."
- "They're ICE. They're tearing up families. That's not going to happen to my family."
- "My husband didn't have any, anything criminal. So, this is not the right way to do this."
- "I'm not going to accept this. This is not going to happen. This is crazy."

- "[T]hey don't have the right to do this. This is so frustrating."
- "I can't sit down unless these freaking criminals are done from my house."
- "If you don't send them. I go outside. I go outside the backyard. And I'll just shoot them in the head."
- "So once and forever, I'll end up in prison."
- "Just send somebody over here so these freaking criminals will go away from my house. That's it."

Defendant's Exhibit 1 at 1-14.

When ICE officers returned the next day with a warrant, Defendant and her husband still refused to open the door. The agents had to use a drone to remove their garage door and enter the house before Defendant and her husband exited. Two loaded handguns were found in the home, readily accessible.

The Court accepts that Defendant was under stress during her call with the 911 operator, and understands her strong emotions at the prospect of her husband being detained and deported. But Defendant's comments, made while she knew she was being recorded, include clear threats to shoot ICE officers, and not just if they tried to enter her house. She called the agents "freaking criminals" and "stupid people," said she would not accept her husband's arrest and would shoot the officers even if it meant going to prison. When agents returned with a warrant – presumably after she had calmed down somewhat – Defendant refused to comply until after the agents used a remote vehicle to breach her house.

These facts show Defendant remains a danger to the community. She has said she will not permit her family to be separated, she has clearly threatened violence against ICE agents (whom she denigrates), her husband remains in custody and facing deportation, and she has declared that she will not be deterred by the prospect of prison. Given the grave nature of these threats, the Court cannot discount them simply as stressed outbursts. By

clear and convincing evidence, they show Defendant presents a danger to ICE agents and other law enforcement officers engaged in immigration work.[2]

**IT IS ORDERED** that Defendant's appeal of Judge Fine's detention order (Doc. 39) is **denied**.

Excludable delay pursuant to 18 U.S.C. § 3161(h)(1)(D) is found to commence on July 24, 2025 for a total of 10 days.

Dated this 1st day of August, 2025.

David G. Campbell
United States District Judge

[2] The Court does not find that Defendant is a flight risk. She chose to come to this country and undergo the process of naturalization, she has not travelled outside the U.S. since her arrival in 2016, and her husband remains in Arizona.